TIMOTHY COURCHAINE
United States Attorney
District of Arizona
GABRIEL A. PERAZA
Assistant U.S. Attorney
Arizona State Bar No. 027428
405 W. Congress Street, Suite 4800
Tucson, Arizona 85701
Telephone: 520-620-7300
Email: Gabriel.Peraza@usdoj.gov
*Attorneys for Defendant*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| David Ruiz,<br><br>    Plaintiff,<br><br>  v.<br><br>Troy Meink, in his official capacity as the Secretary of the U.S. Department of the Air Force,<br><br>    Defendant. | CV-23-00549-TUC-AMM<br><br>**DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |

Pursuant to Rule 56, Fed. R. Civ. P., defendant Troy Meink, in his official capacity as the Secretary of the U.S. Department of the Air Force (collectively, the "Air Force"), hereby responds in opposition to the Motion for Partial Summary Judgment (Doc. 52) filed by plaintiff David Ruiz ("Plaintiff") with respect to his failure-to-accommodate claim (Count Two).

This response is supported by the following Memorandum of Points and Authorities, Defendant's Separate Statement of Facts in Support of Motion for Summary Judgment filed on July 31, 2025 (Doc. 51), Defendant's Controverting Statement of Facts in Support of Response in Opposition to Plaintiff's Motion for Partial Summary Judgment, which is filed contemporaneously herewith pursuant to LRCiv 56.1(b),[1] and the existing Court record.

---

[1] To avoid duplicative submissions to the Court, the Air Force relies on and cites herein statements of fact submitted to the Court in support of its Motion for Summary Judgment (SOF ¶¶ 1-116) and additional statements of fact submitted with its controverting statement of facts in support of this response (SOF ¶¶ 117-124). Plaintiff's statement of facts is referred to herein as "PSOF."

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.    Introduction.**

Plaintiff is a former civilian, nonappropriated fund ("NAF")[2] employee of the Air Force. SOF ¶ 115. This case arises from Plaintiff's attempt during his Air Force employment to have certain used Annual Leave ("AL") and Sick Leave ("SL") reimbursed to him and his extended absences from work during 2020-2021 (533 hours in total) retroactively converted to Weather and Safety Leave ("WSL").[3] Plaintiff's supervisor, Daniel Baker, in consultation with Air Force Human Resources and Air Force management, denied Plaintiff's leave conversion request. Plaintiff challenged *the denial of his leave conversion request* in an Equal Employment Opportunity ("EEO") complaint alleging that it resulted from disability discrimination. Although untimely, Plaintiff's EEO complaint was denied on the merits. As relevant to Plaintiff's motion, Plaintiff claimed in this lawsuit that he was denied some *unspecified* reasonable accommodation for a disability (Count Two).

Plaintiff's failure-to-accommodate claim fails for lack of administrative exhaustion because he never specified in his EEO pre-complaint or formal complaint that he was denied an accommodation, and therefore no such claim was investigated or prosecuted through the administrative process. It also fails for the following additional reasons: (1) Plaintiff was not a qualified individual capable of performing the essential functions of his position while absent from the workplace pursuant to multiple doctor's notes because the essential functions of his management position required an on-site presence; (2) Plaintiff did not notify the Air Force of his supposed need for an accommodation, including his now proffered accommodation of 100% telework, and (3) Plaintiff's proffered accommodation (100% telework) would have imposed an undue hardship on the lodging operations at DMAFB. For each of these separate and independent reasons, this Court should deny Plaintiff's motion in its entirety.

---

[2] An NAF employee's salary is paid from earnings generated by the activities of a Nonappropriated Fund Instrumentality ("NAFI"), not congressional appropriations. *See* 10 U.S.C. § 1587(a)(1); *see also Calder v. Crall*, 726 F.2d 598, 600 (9th Cir. 1984).

[3] WSL is a type of paid leave that may be granted to a federal employee at an employer agency's *discretion* under limited circumstances, as opposed to a type of paid leave that is earned by a federal employee, such as AL and SL. *See* 5 U.S.C. § 6329c.

**II.    Factual Background.**

**A.    The Lodging Operations at Davis Monthan Air Force Base.**

The 355th Force Support Squadron ("FSS") at Davis Monthan Air Force Base in Tucson, Arizona ("DMAFB") includes a lodging operation and facility. SOF ¶¶ 1-2. The facility provides a place to stay for active duty and retired military, U.S. Department of Defense employees, and their families while they visit the installation. SOF ¶ 3. Lodging is a NAFI, which means that it is funded through revenue generated by its own operations (primarily room fees), as opposed to through congressional appropriations. SOF ¶ 4.

In 2008, the Air Force restructured the supervisory positions in lodging and authorized the General Manager of Lodging at DMAFB, Mr. Baker, to hire an Assistant Manager. SOF ¶ 11. Plaintiff applied for the position, and Mr. Baker selected him. SOF ¶¶ 12-13. Plaintiff was reasonable for overseeing all aspects of lodging operations to ensure quality and mission accomplishment, including, without limitation, directing and performing inspections, planning and coordinating various lodging related projects and facility improvements, directing work through subordinate supervisors, exercising managerial authority to ensure compliance with policies and to meet squadron needs, resolving customer and employee grievances, and evaluating subordinate employees. SOF ¶ 14.

**B.    Plaintiff's Leave Use *Before* the COVID-19 Pandemic.**

In 2017, Plaintiff informed Mr. Baker that he was experiencing some intestinal related health problems. SOF ¶ 16. When Plaintiff subsequently requested to use leave (AL and SL) due to his health problems, Mr. Baker was supportive and approved the leave. SOF ¶ 17.

On or around March 14, 2019, Plaintiff provided the Air Force with a doctor's note advising that he needed to "leave early from work at 2:30pm as needed due to medical issues [through] 12/31/19." SOF ¶ 18. For the remainder of 2019 and continuing into 2020, Plaintiff routinely left work early with Mr. Baker's approval. SOF ¶ 19. Plaintiff used a combination of AL and SL for the portions of each workday that he was absent. SOF ¶ 20.

On or around January 6, 2020, Plaintiff provided the Air Force with an additional doctor's note advising that he could only work limited hours: "from 7:30am-2:30pm Monday

1  through Friday due to medical conditions."[4] SOF ¶ 21. However, Plaintiff's availability

2  became even further limited because he would routinely request to leave work even earlier

3  than 2:30 pm due to his medical conditions, and Mr. Baker accommodated his requests. SOF

4  ¶¶ 23, 24, 116 (RFA No. 13). After January 6, 2020, and continuing into March of 2020,

5  Plaintiff continued using a combination of AL and SL for the portions of each day that he was

6  absent from work with Mr. Baker's approval. SOF ¶¶ 25-26.

7          **C.      WSL Guidance in Response to the COVID-19 Pandemic.**

8          By congressional authority, the Air Force has the discretion to grant WSL under

9  limited circumstances. *See* 5 U.S.C. § 6329c. WSL is not an entitlement. *Id*. While the decision

10  to grant WSL is discretionary, the applicable regulations are designed to prevent abuse. *See*,

11  *e.g.*, 5 CFR § 630.1606(c).

12          In accordance with 5 CFR § 630.1604, the government issued guidance in connection

13  with the approval of WSL during the COVID-19 pandemic. The guidance provided to DMAFB

14  management, which would include Mr. Baker *and Plaintiff*, included the following:

15          •      An Air Force NAF-HR Directive dated March 13, 2020, which provided, in

16  relevant part, that WSL "*may* [be] authorize[d] . . . when an asymptomatic employee . . . is

17  subject to . . . quarantine or isolation . . . under the direction of public health authorities due to

18  a significant risk of exposure to . . . [COVID-19]." SOF ¶ 27 (emphasis added).

19          •      An Air Force NAF-HR Directive dated March 17, 2020, which provided, in

20  relevant part, that the Air Force "*may* grant employees [WSL] under 5 U.S.C. § 6329c(b) at

21  [its] *discretion*." SOF ¶ 28 (emphasis added).

22          •      A Memorandum Under the Secretary of Defense dated March 30, 2020, with

23  an attached matrix reiterating that WSL "is not an entitlement" and providing that "approval

24  authority is the commander or *head of activity* unless further delegated." SOF ¶ 29 (emphasis

25  added). Mr. Baker is the "head of activity" for DMAFB lodging, and therefore the decision to

26  grant Plaintiff WSL was within his discretion. SOF ¶ 30.

27  _____

28  [4] While Plaintiff's shift was supposed to start at 7:30 am, at some point Mr. Baker changed the
start time to 8:00 am because Plaintiff was repeatedly arriving late to work. SOF ¶ 22.

**D.    Plaintiff's Leave Use During the COVID-19 Pandemic.**

DMAFB lodging never closed during the COVID-19 pandemic. SOF ¶ 31. Starting the week of March 23–27, 2020, Plaintiff continued using a combination of AL and SL to account for his partial daily absences from work due to his medical condition and began receiving some WSL due to the COVID-19 pandemic, with Mr. Baker's approval. SOF ¶¶ 32-34.  Plaintiff continued submitting leave forms requesting to use a combination of AL and SL and receive some WSL the week of March 30–April 3, 2020, and Mr. Baker approved them. SOF ¶ 35. Plaintiff did not request and/or receive more than 5 hours of WSL on any day that week. SOF ¶¶ 36-38. The following week, Plaintiff worked a couple partial days on April 6-7, 2020 (using a combination of approved AL, SL and WSL to account for absent hours), and used 8 hours of SL on April 8, 2020, for a scheduled medical treatment. SOF ¶ 39. Plaintiff did not request and/or receive more than 2 hours of WSL on any day that week. SOF ¶ 40.

Plaintiff did not report to work on April 9, 2020, and did not return to work for nearly one year thereafter. SOF ¶ 41. Plaintiff had provided the Air Force with a doctor's note advising: "[p]atient has a compromised immune system due to his health issues. It may be prudent for him to _take some time off work_ to decrease his risk of COVID-19 exposure." SOF ¶ 42 (emphasis added). Additionally, around this timeframe, Plaintiff had represented to Mr. Baker that "his doctor told him that, if he caught [COVID-19], he could die." SOF ¶ 43. When Plaintiff stopped reporting to work, he did not have an arrangement with the Air Force pursuant to which he was guaranteed 8 hours of WSL per day during his absence. SOF ¶ 44.

To account for Plaintiff's absence from work for over 5 months, between April 9–September 4, 2020, Mr. Baker approved leave forms _that were executed by Plaintiff_ and provided for Plaintiff's use of 1 hour of AL and 2 hours of SL and receipt of 5 hours of WSL per day, excepting only May 20, 2020, when Plaintiff had a medical treatment. SOF ¶¶ 45-47. This was the same leave ratio that was requested by Plaintiff and approved by Mr. Baker on the days that Plaintiff did not work at all leading up to his extended absence. SOF ¶ 48. Plaintiff requested and Mr. Baker granted him 5 hours of WSL daily during this timeframe because that is the amount of time Plaintiff was missing work due to his risk of exposure to COVID-19.

SOF ¶ 49. As Mr. Baker explained, Plaintiff was not missing a full (8-hour) workday due to the COVID-19 pandemic because he had not been working a full workday prior to the COVID-19 pandemic. SOF ¶ 50. In fact, after Plaintiff submitted his doctor's note dated January 6, 2020, limiting his work hours, he did not submit a doctor's note advising that he could work a full workday but for the COVID-19 pandemic. SOF ¶¶ 51, 116 (RFA Nos. 11-12).

Plaintiff unilaterally chose not to submit a leave form to Mr. Baker for approval for the workday September 7, 2020, and for an extended time thereafter. SOF ¶ 52. Given the circumstances, Mr. Baker did not designate Plaintiff's absence as Absence Without Leave ("AWOL").[5] SOF ¶ 53. Rather, consistent with Plaintiff and Mr. Baker's pattern, practice, and agreement, Mr. Baker continued approving Plaintiff using 1 hour of AL and 2 hours of SL and granting him 5 hours of WSL per day until March 19, 2021. SOF ¶¶ 55, 116 (RFA Nos. 5-7). Mr. Baker documented the leave on leave forms that included the following notation in the section for Plaintiff's signature: "UNABLE TO SIGN DUE TO COVID[-]19 RESTRICTION." SOF ¶ 56. Plaintiff and/or medical providers acting on his behalf submitted numerous doctor's notes to the Air Force advising that he could not work during this time.[6]

Importantly, after Plaintiff stopped submitting leave requests, Plaintiff acknowledged in an email that he sent to various DMAFB Human Resources personnel and Mr. Baker that he had an arrangement with Mr. Baker pursuant to which he would receive WSL for only part of each shift that he was absent, and Mr. Baker would apply his AL and SL to cover the remainder of his shift. SOF ¶¶ 60-61. Plaintiff explained that he "had no issues" with that arrangement because his *pre-pandemic* doctor's note advised he was "to be *excused from work* at 1400 or there's about because of [his] on going [sic] condition." SOF ¶ 61 (emphasis added).

---

[5] AWOL is an unauthorized absence from duty, a non-pay status, and can form the basis for disciplinary action. SOF ¶ 54.

[6] On October 27, 2020, the Air Force received a doctor's note for Plaintiff requesting to "extend [his] leave until after his appointment for follow up 11/23/20." SOF ¶ 57. On November 23, 2020, the Air Force received a doctor's note for Plaintiff requesting to "extend [his] leave until after his appointment for follow up 1/11/2021." SOF ¶ 58. On January 4, 2021, the Air Force received a doctor's note for Plaintiff "strongly recommending that [he] *stays off work* until 2/1/2021 due to worsening autoimmune disease" and because he was "at very high risk of contracting and dying from COVID-19 if he is infected." SOF ¶ 59 (emphasis added).

1          **E.    Plaintiff's Return to Work.**

2          The Air Force began phasing out WSL near the end of 2020. SOF ¶ 62. A

3    Memorandum Under the Secretary of Defense dated October 19, 2020, provided the following

4    supplemental guidance regarding WSL: "The continued need to grant [WSL] has diminished

5    . . . Supervisors should discuss plans to return to the workplace with employees who are on

6    [WSL]." SOF ¶ 63. Given Plaintiff's prolonged absence from work, the Air Force scheduled

7    him to complete a fit for duty examination in early 2021 and, at his request, even allowed him

8    to use his own doctor. SOF ¶¶ 64-65. The only physical limitation noted by Plaintiff's doctor

9    was that he should continue to "avoid exposure to covid." SOF ¶ 66.

10         On Friday, March 19, 2021, the Air Force ordered Plaintiff to return to work on

11   Monday, March 22, 2021. SOF ¶ 67. The Air Force advised Plaintiff that it would implement

12   numerous measures to ensure his safety, including giving him a private office to limit his

13   interaction with people and avoid his exposure to COVID-19. SOF ¶ 68. Plaintiff did not return

14   to work on March 22, 2021, and instead used SL over the next couple days with Mr. Baker's

15   approval. SOF ¶¶ 70-71.

16         Plaintiff returned to work and worked a full (8-hour) workday on March 24, 2021.

17   SOF ¶ 72. However, on March 25, 2021, Plaintiff represented that he was feeling the effects

18   of a treatment he had recently received and requested approval to leave work early and use 2

19   hours of AL, and Mr. Baker approved his request. SOF ¶ 73. On Friday, March 26, 2021,

20   Plaintiff used 8 hours of SL with Mr. Baker's approval. SOF ¶ 74.

21         The following week (March 29-April 2, 2021), Plaintiff submitted a leave form

22   requesting that Mr. Baker approve him using 40 hours of SL for medical reasons, including

23   him needing to "[f]ollow up with [his] GI Specialist," and Mr. Baker approved his request.

24   SOF ¶ 75. The Air Force subsequently received a doctor's note for Plaintiff advising that he

25   "was seen in the clinic on 3/29/21" and could not return to work until Monday, May 3, 2021.

26   SOF ¶ 76. Since Plaintiff was away from work pursuant to a doctor's note, Mr. Baker approved

27   SL for Plaintiff through Friday, April 30, 2021. SOF ¶ 77.

28         Plaintiff returned to work on May 3, 2021. SOF ¶ 78. While he admits that he checked

his leave balances on his Leave and Earnings Statements ("LESs")—which showed his leave balances and use—after returning to work, he did not express any grievances to Mr. Baker regarding his leave use during the COVID-19 pandemic for many months. SOF ¶¶ 79-80, 116 (RFA Nos. 9-10).

### F.    Plaintiff's Administrative Complaint.

Plaintiff first initiated contact with an EEO counselor on November 16, 2022. SOF ¶ 104. In his EEO pre-complaint dated December 15, 2022, Plaintiff gave notice of a disability discrimination claim, which he framed as: "Whether [Plaintiff] was discriminated against based on disability, Chronic Ultracolitis [sic] (physical) when on 2 November 2022, Mr. Dan Baker, Lodging Manager, 355 FSS/FSVL, did not reinstate 127 hours of [AL] and 406 hours of [SL]." SOF ¶ 105. Plaintiff's EEO pre-complaint does not mention any denial of an accommodation for disability. *Id*. Additionally, Plaintiff cannot explain why he chose November 2, 2022. SOF ¶ 106.

In his EEO formal complaint dated January 23, 2023, Plaintiff framed his claim as whether he had been discriminated against based on disability when Mr. Baker denied his leave conversion request on August 5, 2022, and a Colonel denied a separate grievance he had submitted to his chain of command related to his leave conversion request. SOF ¶ 107. Yet again, Plaintiff made no mention of the denial of an accommodation for disability, and therefore the claim accepted for investigation did not include failure-to-accommodate. SOF ¶ 108. Plaintiff's formal EEO complaint was denied by Final Agency Decision dated September 4, 2023, finding no unlawful employment discrimination. SOF ¶ 109.

## III.    Legal Standard.

To avoid duplicative submissions to this Court, the Air Force incorporates by this reference as though fully set forth herein the summary judgment standard set forth in Section III of its Motion for Summary Judgment (Doc. 50).

## IV.    Legal Argument.

The Rehabilitation Act of 1973, 29 U.S.C. § 701, *et seq*., prohibits federal employers from discriminating against federal employees because of a disability. It adopts the standards

in the Americans with Disabilities Act of 1990 (the "ADA"). *See* 29 U.S.C. § 794(d). A federal employee bringing a failure-to-accommodate claim under the Rehabilitation Act must show that (1) the employee is a "qualified" individual, (2) the employer receives adequate notice of the need for an accommodation, and (3) a reasonable accommodation is available that would not place an undue hardship on the employer's business. *Snapp v. United Transp. Union*, 889 F.3d 1088, 1095 (9th Cir. 2018). Plaintiff's failure-to-accommodate claim fails for the multiple reasons set forth below, and therefore this Court should deny his motion.

### A.    Count Two Fails for Lack of Administrative Exhaustion.

Federal regulations provide that an aggrieved federal employee "must initiate contact with [an EEO counselor] within 45 days of the date of the matter alleged to be discriminatory." 29 C.F.R. § 1614.105(a)(1). It is well-settled that this administrative exhaustion requirement applies to claims brought pursuant to the Rehabilitation Act. *See Nguyen v. Nielsen*, 731 F. App'x 687, 688 (9th Cir. 2018) (citing *Boyd v. U.S. Postal Serv.*, 752 F.2d 410, 412-13 (9th Cir. 1985)). Indeed, "[t]he Ninth Circuit has held that the rejection of a proposed *accommodation for a disability* constitutes a 'discrete act' that accrues when the employer denies an individual employee's request." *Branch v. McDonald*, No. 14-CV-03846-DMR, 2015 WL 7874763, at *6 (N.D. Cal. Dec. 4, 2015) (emphasis added) (citing *Cherosky v. Henderson*, 330 F.3d 1243, 1247-48 (9th Cir. 2003)).  Although not jurisdictional in nature, this pre-filing exhaustion requirement remains a "mandatory processing rule." *See Barker v. McFerran*, No. 23-CV-00308-DMR, 2023 WL 6933357, at *3 (N.D. Cal. Oct. 18, 2023) (discussing the EEO charge-filing requirement in light of *Fort Bend Cnty., Texas v. Davis*, 587 U.S. 541 (2019)). And failure to comply with it may be "fatal" to an employee's discrimination claims brought in federal court absent waiver, estoppel, or equitable tolling. *Lyons v. England*, 307 F.3d 1092, 1105 (9th Cir. 2002); *Leong v. Potter*, 347 F.3d 1117, 1122 (9th Cir. 2003); *Leorna v. United States Dep't of State*, 105 F.3d 548, 550 (9th Cir. 1997).

Here, the Air Force's alleged failure to provide a reasonable accommodation was not a claim identified by Plaintiff in his EEO pre-complaint or formal complaint, and therefore it was not accepted for investigation through the EEO process. SOF ¶¶ 104-108, 116 (RFA No.

4), and Exhibits 13.1-13.3; Doc. 15 at ¶ 15. Moreover, Plaintiff did not identify in his motion any reasonable accommodation request that was denied within 45 days of when he first initiated contact with an EEO counselor on November 16, 2022 (*see* SOF at Exhibit 13.1). Plaintiff was aware of the Air Force's EEO policies and who to contact if he had concerns about discrimination, including any wrongful denial of an accommodation, due to his extensive management experience. PSOF at Exhibit S, ¶¶ 23.1-2.4.

Plaintiff has not exhausted his administrative remedies with respect to Count Two. Had Plaintiff presented his failure-to-accommodate claim through an EEO complaint, the agency would have had an opportunity to investigate it and reject it as untimely. For this reason alone, this Court should deny Plaintiff's motion and grant the Air Force's motion with respect to Count Two (Doc. 50). *See Gipaya v. Barrett*, 803 F. App'x 111, 112 (9th Cir. 2020) (affirming dismissal of failure-to-accommodate claim for lack of administrative exhaustion).

**B.    Plaintiff's Failure-To-Accommodate Claim Also Fails on the Merits.**

**1.    Plaintiff Is Not a Qualified Individual.**

"A 'qualified individual' under the Rehabilitation Act is an individual with a disability 'who, with or without reasonable accommodation, can perform the essential functions of [the] position.'" *Aki v. Univ. of Cal. Lawrence Berkeley Nat'l Lab'y*, 74 F. Supp. 3d 1163, 1175 (N.D. Cal. 2014) (quoting *Mustafa v. Clark County Sch. Dist.*, 157 F.3d 1169, 1175 (9th Cir. 1998)). A job function is essential if removing it would fundamentally alter the position. 29 C.F.R. § 1630.2(n)(1).

Determining a particular job's essential functions is a "highly fact-specific inquiry." *Cripe v. City of San Jose*, 261 F.3d 877, 888 n.12 (9th Cir. 2001). At a minimum, a court must consider the employer's judgment regarding what job functions are essential, including any "written [job] description" the employer prepared. 42 U.S.C. § 12111(8). "Such evidence, however, is not conclusive." *Rohr v. Salt River Project Agric. Imp. & Power Dist.*, 555 F.3d 850, 864 (9th Cir. 2009) (recognizing that if evidence is conflicting regarding a position's essential functions, a factual dispute precluding summary judgment exists "notwithstanding the [employer's] job description."). Thus, "[t]he question whether a particular accommodation

is reasonable depends on the individual circumstances of each case and requires a fact-specific, individualized analysis of the disabled individual's circumstances and the accommodations that might allow him to meet the [position's] standards." *Vinson v. Thomas*, 288 F.3d 1145, 1154 (9th Cir. 2002) (quotation marks omitted).

Here, Plaintiff relies on statements that he made in a Declaration dated March 17, 2023, to establish that he has had a disability (chronic ulcerative colitis) since 2017, and that his condition is "permanent and recurring." PSOF at Exhibit S. While these statements are unsupported by testimony from a qualified expert and Plaintiff admitted in that same Declaration that he "is not a doctor," the Air Force does not dispute that Plaintiff received treatment for chronic ulcerative colitis during 2020-2021. Despite this, however, Plaintiff is still not a qualified individual for purposes of reasonable accommodation analysis because he was not able to perform the essential functions of his job, with or without reasonable accommodation, during the relevant timeframe. Importantly, Plaintiff does not argue that he could have performed the essential functions of his management position without accommodation. Instead, he argues that he could have performed the essential functions of his management position with a 100% telework accommodation.[7] Doc. 52 at 12:20-21.

However, Plaintiff and his doctors repeatedly represented to the Air Force that he could not work during his extended absence, not that he could work with an accommodation, such as telework. SOF ¶¶ 42, 57-59, 72-78. In fact, Plaintiff repeatedly admits that he could not work for an extended timeframe in his First Amended Complaint.[8]

At most, Plaintiff requested leave approval (i.e., approval *not* to work), and his leave requests were granted. In fact, prior to the COVID-19 pandemic, Plaintiff provided the Air Force with a doctor's note advising that he was *incapable* of working a full 8-hour shift due

---

[7] As discussed below in Section IV(B)(2), Plaintiff never notified the Air Force of his supposed need for an accommodation, including the ability to 100% telework.

[8] *See* Doc. 15 at ¶¶ 40 (noting Plaintiff's doctor advised he needed to "[t]ake some time off work"), 42 (noting Plaintiff's doctor advised to "extend" his leave), 43 (noting Plaintiff's doctor advised he needed to "stay off work"), 46 (noting Plaintiff's doctor advised his leave needed to be "extended"), 49 (noting Plaintiff's doctor advised he should "not return to work"), and 51 (noting Plaintiff was not "released" by his doctor "to return to work" until May 3, 2021).

to his medical condition. SOF ¶¶ 18-21. Thereafter, Plaintiff routinely submitted leave forms seeking supervisor approval to use a combination of SL and AL for the portion of each shift that he was incapable of working due to his medical condition (averaging more than 3 hours per day), and his supervisor approved each of Plaintiff's leave requests. SOF ¶¶ 18-26, 81-84. Then, after the COVID-19 pandemic began (in March of 2020), Plaintiff provided the Air Force with doctor's note advising that he needed to "take some time off work" to reduce his risk of exposure to COVID-19 and represented to his supervisor that "his doctor told him that, if he caught [COVID-19], he could die." SOF ¶¶ 42-43.

Over the next 5 months (April-September of 2020), Plaintiff did not report to work but routinely submitted leave forms seeking supervisor approval to: (1) continue using a combination of SL (2 hours per day) and AL (1 hour per day) for the portion of each shift that he was *incapable* of working based on his inability to work a full (8-hour) shift due to his medical condition; and (2) receive WSL (5 hours per day) for the portion of each day that he was missing work to avoid his risk of exposure to COVID-19 based on his new doctor's note. SOF ¶ 45, 49-51. Plaintiff's supervisor approved each of Plaintiff's leave requests during that timeframe. *Id*. Thus, Plaintiff was *fully* compensated without having to perform any of the essential functions of his job, and most of that compensation was in the form of leave that Plaintiff did not have to earn (i.e., WSL).

When Plaintiff stopped submitting leave requests in September of 2020, but continued not reporting to work, his supervisor continued approving leave for Plaintiff for many months in the same leave ratio that Plaintiff had previously requested and received given the circumstances (i.e., Plaintiff and/or his medical providers submitting numerous doctor's notes to the Air Force advising that he could not work during this timeframe). SOF ¶¶ 53, 57-59. Importantly, after Plaintiff stopped submitting leave requests, he emailed DMAFB Human Resources personnel acknowledging that he understood his supervisor was continuing to approve leave for him consistent with their understanding and agreement that he would receive some WSL and use a combination of SL and AL each day because regardless of the COVID-19 pandemic, his doctor's note indicated he was "to be *excused from work* at 1400 or there's

about because of [his] on going [sic] condition." *See* SOF ¶¶ 60-61 (emphasis added). Plaintiff unequivocally stated he "had no issues" with that arrangement. *Id.* Plaintiff did not mention anything to DMAFB Human Resources in his email about him being able to perform the essential functions of his job with an accommodation, including 100% telework. *Id.* And Mr. Baker received no such request. SOF ¶¶ 111-113, 120. In fact, the Air Force has specific policies governing telework approval. SOF ¶ 119.

Telework can be a reasonable accommodation under certain circumstances. *See Humphrey v. Mem'l Hosps. Ass'n*, 239 F.3d 1128, 1136 (9th Cir. 2001). It is, however, a fact intensive inquiry. *Id.* at 1136-37 (denying a motion for summary judgment because there was a triable issue of fact as to whether the employee "would have been able to perform the essential duties of her job with the accommodation of a work-at-home position"); *see also Niimi-Montalbo v. White*, 243 F. Supp. 2d 1109, 1124 (D. Haw. 2003) (finding a genuine issue of material fact as to whether telework would have been a reasonable accommodation). Other than directing this Court to the Assistant Manager of Lodging Position Description, Plaintiff fails to explain what he considers to be the essential functions of his position, how exactly he could perform each of those essential functions through 100% telework, and for how long he thinks he should have been allowed to 100% telework (i.e., the start date and end date).

According to the Position Description, Plaintiff's essential job functions included overseeing all aspects of lodging operations to ensure quality and mission accomplishment, including, without limitation: exercising managerial authority to meet squadron needs; developing policies and procedures for effective utilization of all lodging assets; performing surveys, audits, and inspections of lodging facilities to determine adequacy of lodging conditions and compliance with requirements; planning and coordinating various lodging related projects and facility improvements and renovations; directing work through subordinate supervisors; developing work plans used by subordinate supervisors; determining training needs; resolving grievances; evaluating subordinate supervisors; and recognizing and taking action to correct situations posing a threat to health and safety. SOF ¶ 14 and Exhibit 1.1. While Plaintiff suggests in his motion that the tasks he performed focused on areas such

as policy and procedure development, formulating and setting goals and objections, and directing work (*see* Doc. 52 at 12:16-21), Plaintiff previously testified that he "strictly did operations," which he explained as primarily involving *in-person* inspections of lodging facilities and *in-person* review of work performed by contractors, engineers, and subordinates, including the lodging maintenance team (*see* SOF at Exhibit 3, 13:3-14:18).

With respect to the various functions that he was required to perform in-person as part of the lodging "operations" side, Plaintiff identified the following: meeting with lodging contractors to discuss the scope of the work they were going to be completing at the lodging facilities; escorting lodging contractors on and off DMAFB; supervising and inspecting all work completed by lodging contractors; performing daily inspections of the lodging facilities, including inspections for quality control purposes and to ensure that work orders were completed; inspecting work performed by the maintenance team and engineers; performing monthly safety inspections; performing quarterly inspections with the fire department; assisting at the front desk if he noticed a line of customers; being present for annual inspections by the Air Force, including some "no notice" inspections; and meeting with new employees and providing them with tours of the facilities. SOF at Exhibit 3, 12:25-27:23. When asked if he could perform these tasks through telework, Plaintiff testified (inaccurately) that he could because DMAFB was "shut down" during the COVID-19 pandemic. SOF at Exhibit 3, 60:6-15. However, DMAFB lodging remained open 24/7 during the COVID-19 pandemic (SOF ¶ 31), as Plaintiff now expressly admits (PSOF ¶ 55).[9]

Plaintiff concludes in his motion that his "management duties clearly could have been accomplished by telework." Doc. 52 at 12:20-21.  Yet he fails to explain how he could have via telework performed, among other duties, all the required inspections of the lodging facilities for quality control purposes, reviewed of all the work performed by contractors, the maintenance team, and engineers, directed and reviewed all the work performed by his

---

[9] Average lodging occupancy prior to the COVID-19 pandemic was approximately 75,000 rooms occupied per year. SOF at Exhibit 2, 73:25-74:22. While occupancy initially declined due to the COVID-19 pandemic, lodging remained profitable throughout the pandemic (excepting only the month of March of 2020), with approximately 57,000 rooms occupied in 2020 and approximately 61,000 rooms occupied in 2021. *Id.*

1  subordinates, and determined areas of the facility that required improvement or areas that

2  could benefit from employee training. This Court should reject Plaintiff's self-serving and

3  unsupported statement that he could have simply performed all his duties via 100% telework.[10]

4          No reasonable juror could find that not even some physical presence in the office is

5  an essential function of serving as the Assistant Manager of Lodging at DMAFB. *See* SOF ¶¶

6  117-124. Plaintiff's duties and responsibilities as an Assistant Manager of Lodging included

7  adherence to and compliance with Air Force lodging standards and requirements, including

8  the standards and requirements described in Air Force Manual 34-135, effective July 1, 2019,

9  which requires physical presence at the lodging facilities. SOF ¶ 117. Moreover, the position

10 is on-site mission essential due to the nature of its responsibilities, including required and

11 necessary operational oversight, in-person inspections, oversight and coordination of

12 construction of new facilities and closure of old facilities, customer service and emergency

13 response, cash handling and financial controls, system and security limitations, and regulatory

14 compliance. SOF ¶¶ 118, 121-123. While limited administrative tasks may be computer-based,

15 the essential functions of the position are incompatible with telework. SOF ¶ 122.

16         Plaintiff could not perform all the essential functions of his management position via

17 telework and the law is clear that "[t]he ADA does not require an employer to exempt an

18 employee from performing essential functions or to reallocate essential functions to other

19 employees." *Chandler v. DeJoy*, 714 F. Supp. 3d 1108, 1130 (D. Ariz. 2024), aff'd, No. 24-

20 1265, 2025 WL 1404947 (9th Cir. May 15, 2025) (quoting *Dark v. Curry Cnty.*, 451 F.3d

21 1078, 1089 (9th Cir. 2006)). For this reason, the Court should deny Plaintiff's motion.

22                    **2.    Plaintiff Did Not Notify the Air Force of His Supposed Need for an
                              Accommodation.**

23

24         "[O]nce an *employee requests* an accommodation . . ., the employer must engage in

25 _____

26 [10] This Court should also reject any later argument by Plaintiff that he could perform some,
   but not all, essential functions of his job through telework since his proffered accommodation

27 is 100% telework. *See*, *e.g.*, *Randolph v. Carranza*, No. 218CV-00238APGNJK, 2020 WL
   2770680, at *6 (D. Nev. May 28, 2020) (declining to decide the issue of whether a position

28 required full-time physical presence at work because the employee "sought to be placed on
   100% telework as her accommodation," and therefore no reasonable jury could find that she
   was qualified for a position that required at least some physical presence at work).

1    an interactive process with the employee . . ." *Zivkovic v. S. California Edison Co.*, 302 F.3d
2    1080, 1089 (9th Cir. 2002) (emphasis added); *see also Snapp*, 889 F.3d at 1095 ("The Ninth
3    Circuit has held that [under the ADA] *notifying an employer* of a need for an accommodation
4    triggers a duty to engage in the 'interactive process.'") (emphasis added). Consistent with
5    federal law, the Air Force's policies provide that a duty to engage in the interactive process is
6    not triggered until a request for accommodation has been made by the employee, unless certain
7    conditions are met, including that the employee's "disability prevents the employee from
8    requesting a reasonable accommodation." PSOF at Exhibit M (§§ 13.2.1 and 13.2.1.1). Indeed,
9    Plaintiff does not dispute that he had to request an accommodation to trigger any obligation
10   on the part of the Air Force to engage in the interactive process. *See* Doc. 52 at 10:12-14
11   (stating that when an employee "*[n]otif[ies] an employer* of a need for an accommodation," it
12   "triggers a duty to engage in an 'interactive process' . . .") (emphasis added); *see also id.* at
13   13:11-16 (stating that an employee does not have to use "magic words . . . for requesting
14   accommodation" but he does need to "*inform the employer* of the need for an adjustment due
15   to a medical condition.") (emphasis added).

16            Despite this, Plaintiff does not identify when or how he notified or informed the Air
17   Force that he needed an accommodation, or what accommodation he supposedly requeseted
18   that was denied. While Plaintiff suggests that authorizing him to 100% telework would have
19   been a reasonable accommodation, he made no such request. SOF ¶¶ 111-113, 116 (RFA Nos.
20   1-3). In fact, even if the request had been made verbally, Air Force policy mandates that
21   employees "follow up on any initial request by confirming their request in writing to their
22   immediate supervisor on the Request for Reasonable Accommodation Template Form." PSOF
23   at Exhibit M (§ 13.2.2). Plaintiff never requested a workplace accommodation other than his
24   requests to use leave to leave work early and later not work at all, which were both
25   accommodated. SOF ¶¶ 111-113, 116 (RFA Nos. 1-3). Nor could he credibly claim that he
26   sought an accommodation when both he and his doctors repeatedly represented to the Air
27   Force that he could not work during his extended absence. SOF ¶¶ 42, 57-59, 72-78.

28            Plaintiff merely requested that Mr. Baker grant him additional WSL *after-the-fact*,

which cannot form the basis of a failure-to-accommodate claim. *See Chandler*, 714 F. Supp. 3d at 1131 (finding a request to excuse past absences and/or treat them as approved absences was a "non-starter because it is retrospective"). This is so because granting Plaintiff additional leave that he never requested in advance of being absent from work is not a change that would have *enabled him to work* during the COVID-19 pandemic. *See also Hubbard v. Del Toro*, No. 3:22-CV-05357-TMC, 2024 WL 3358742, at *6 (W.D. Wash. July 10, 2024).

Even assuming *arguendo* that Plaintiff had made a request for a 100% telework accommodation, the Air Force cannot be liable for not engaging in the interactive process because he could not have performed all the essential functions of his job through telework for the reasons explained above. *See Vinson v. Thomas*, 288 F.3d 1145, 1154 (9th Cir. 2002) ("An employer who fails to engage in such an interactive process in good faith may incur liability [only] *if a reasonable accommodation would have been possible*.") (quotation marks omitted and emphasis added). The plaintiff bears the initial burden of showing that a reasonable accommodation was possible. *Id.*

### 3. The Proffered Accommodation (100% Telework), Would Have Imposed an Undue Hardship on Lodging Operations.

A requested accommodation is unreasonable if it would place an undue hardship on the employer. *See Humphrey*, 239 F.3d at 1136 n.14 (citing and applying 42 U.S.C. § 12112(b)(5)(A)). Here, allowing Plaintiff to 100% telework would have meant that Plaintiff would not have been required to perform all the essential functions of his position, which were largely operational in nature, for the reasons explained above. Allowing Plaintiff to avoid all his in-person management obligations would have effectively defeated the purpose of the Air Force having an Assistant Manager of Lodging. SOF ¶¶ 117-118, 121-124. In fact, while Plaintiff was on leave, Mr. Baker was solely responsibility for performing all the management duties, which imposed a significant hardship on him and the lodging operation. SOF ¶ 124.

## V. Conclusion.

For the foregoing reasons, the Air Force respectfully requests this Court deny Plaintiff's motion in its entirety.

1    Dated: September 2, 2025.

2

3                                         TIMOTHY COURCHAINE
                                          United States Attorney
4                                         District of Arizona

5                                         s/Gabriel A. Peraza
                                          GABRIEL A. PERAZA
6                                         Assistant U.S. Attorneys
                                          *Attorneys for Defendant*
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28